## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

**Randy Hui, an Individual,**

      **Plaintiff,**

    **v.**

**Marcin Chojnacki, an Individual, Laurena Mikosz, an Individual, Grand Columbus EC LLC, an Indiana Limited Liability Company, Illinois Assets LLC, a Delaware Limited Liability Company, 1st Midwest Financial, Inc., an Illinois Corporation, Robert Rixer, an Individual, Kendall Murphy, an Individual, Chase Real Estate LLC, an Illinois Limited Liability Company, Midwest Title And Closing Services LLC an Illinois Limited Liability Company, Mainstreet Property Management an Illinois Limited Liability Company, EJ Investment Group, Inc. a Delaware Corporation, Rachel Irwin, an Individual and Citypoint Illinois LLC, an Illinois Limited Liability Company,**

      **Defendants.**

**Case No.**

**Judge:**

**Magistrate:**

## COMPLAINT

NOW COMES the Plaintiff, Randy Hui by and through his attorneys, GASPERO &
GASPERO, ATTORNEYS AT LAW, P.C., and in complaining against Grand Columbus EC
LLC, an Indiana Limited Liability Company, Illinois Assets LLC, a Delaware Limited Liability
Company, 1st Midwest Financial, Inc., an Illinois Corporation Marcin Chojnacki, an Individual,
Laurena Mikosz, an Individual, Robert Rixer, an Individual, Kendall Murphy, an Individual,
Chase Real Estate LLC, an Illinois Limited Liability Company, Midwest Title And Closing
Services LLC an Illinois Limited Liability Company, Mainstreet Property Management an
Illinois Limited Liability Company, EJ Investment Group, Inc. a Delaware Corporation, Rachel
Irwin, an Individual and Citypoint Illinois LLC, an Illinois Limited Liability Company, alleges
as follows:

## JURISDICTION

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 in
that the Plaintiff asserts claims arising under the Racketeer Influenced and Corrupt Organizations
Act 18, U.S.C. § 1962.

This Court has jurisdiction over this action pursuant to 28 U.S. Code § 1332(a)(1)
whereas the Plaintiffs is a citizen of the State of California, and the Defendants are citizens of
Illinois and Delaware. The amount in controversy, exclusive of costs, exceeds $75,000.

This Court has supplemental jurisdiction over the Plaintiff's state law claims, pursuant to
28 U.S. § 1367.

**VENUE**

Venue is proper in this District pursuant 18 U.S.C. § 1965 and 28 U.S. Code § 1391(c)(2), whereas multiple Defendants are residents of Illinois and the real estate at issue is located in Northern Illinois and Northern Indiana.

Venue is proper in this District pursuant to 18 U.S.C. § 1965 and 28 U.S.C. § 1391 because Defendants are subject to personal jurisdiction in this judicial district and reside in this district.

**PARTIES**

1.      Plaintiff Randy Hui ("Hui"), an individual, is a California citizen.

2.      Defendant Marcin Chojnacki ("Chojnacki"), an individual, is an Illinois licensed real estate broker and an Illinois citizen.

3.      Defendant Laurena Mikosz a/k/a Lori Mikosz ("Mikosz"), an individual, is an Illinois licensed real estate broker and an Illinois citizen.

4.      Defendant 1st Midwest Financial, Inc., ("1st Midwest") is an Illinois Corporation with its principal place of business in the State of Illinois. The president of 1st Midwest is Defendant Kendall Murphy.  Defendant 1st Midwest is a citizen of Illinois.

5.      Defendant Grand Columbus EC LLC is an Indiana Limited Liability Company managed and owned by Illinois Assets LLC.

6.      Defendant Illinois Assets LLC is a Delaware Limited Liability Company owned and controlled by Defendants Chojnacki and Robert Rixer.

7.      Defendant EJ Investment Group Inc. is a Delaware Corporation with its principal place of business in Illinois.  Defendant EJ Investment Group, Inc. is a citizen of both Delaware and Illinois.

3

8.      Defendant Kendall Murphy, an individual, is an Illinois citizen.

9.      Defendant Robert Rixer, an individual, is an Illinois citizen.

10.     Defendant Chase Real Estate, LLC ("Chase Real Estate") is an Illinois LLC owned and controlled by Christian W. Chase, an Illinois citizen.  Defendant Chase Real Estate is a citizen of Illinois in that all of its members are citizens of Illinois.

11.     Defendant Midwest Title and Closing Services LLC ("Midwest Title") is an Illinois Limited Liability Company owned and controlled by Defendant Rachel Irwin, an Illinois citizen, Defendant Chojnacki, an Illinois citizen, and XYZABC, Inc., a Delaware corporation with its principal place of business in Illinois.  Defendant Rachel Irwin is President of XYZABC, Inc. XYZABC, Inc. is a citizen of Illinois and Delaware. Defendant Midwest Title is a citizen of Illinois and Delaware in that all its members are citizens of Illinois and Delaware.

12.     Defendant Midwest Title provides real estate transaction services and serves as the registered agent of Defendants Grand Columbus EC LLC.

13.     Defendant Rachel Irwin ("Irwin") is an attorney licensed to practice law in and a Citizen of Illinois.  Rachel Irwin is employed by and is the Manager of Midwest Title.   Irwin is also the General Counsel and Illinois registered agent of EJ Investment Group Inc. and Defendant Mainstreet Property Management LLC.

14.     Defendant Mainstreet Property Management ("Mainstreet Management") is an Illinois Limited Liability Company owned and controlled by EJ Investment Group, a citizen of Illinois and Delaware.  Defendant Mainstreet Management is a citizen of Illinois and Delaware in that all of its members are citizens of Illinois and Delaware.

15.     Defendant Citypoint Illinois LLC ("Citypoint Illinois") is an Illinois Limited Liability Company owned and controlled by Citypoint Group, Inc., a Delaware corporation with

4

its principal place of business in Illinois. Defendant Citypoint Illinois is a citizen of Illinois and Delaware in that all of its members are citizens of Illinois and Delaware.

16.     "Citipoint Properties" appears to have been an un-incorporated enterprise organized by Chojnacki which held itself out as a real estate investment company for the purposes of inducing and capitalizing from out-of-state investors in connection with Illinois and Indiana real estate.  On December 28, 2022 this un-incorporated enterprise organized itself as Defendant "Citypoint Illinois LLC" an Illinois Limited Liability Company (and Illinois and Delaware citizen). The allegations set forth herein cover time periods when this enterprise was both un-incorporated and incorporated.

17.     "Flip Chicago" appears to have been an un-incorporated enterprise organized by Chojnacki which held itself out as a real estate investment company for the purposes of inducing and capitalizing from out-of-state investors in connection with Illinois real estate.

18.     Defendants Irwin, Chojnacki, Mikosz, Rixer, Mainstreet Management, and EJ Investment Group all operate out of the same office space located at 25-41 E. Main Street Suite 204, Roselle, IL 60172.

## <u>ALLEGATIONS COMMON TO ALL COUNTS</u>

### I. THE "FLIP CHICAGO" ENTERPRISE

#### Part I of the Fraud: Luring the Investor – Chase Real Estate Services and "Flip Chicago"

19.     Hui resides in Los Angeles, California. In the fall of 2020, he found an advertisement on the internet for "Flip Chicago" which identified itself as a system for real estate investment. Hui contacted "Flip Chicago" in response to the advertisement.

20.     Specifically, Flip Chicago promised to assist the investor in the purchase of foreclosed residential real estate (single family homes) and then provide post-closing services relative to renovating the property so that it could be quickly resold at a profit (or "flipped"). The website for Flip Chicago touts its services as easy and "Free."  See Flip Chicago website attached as Exhibit 1.

21.     Hui's query to "Flip Chicago" prompted a response from Defendant Mikosz.  The response from Mikosz evolved into sustained text and phone interactions through which Mikosz drew Hui into the scheme giving rise to this action.

22.     Shortly after the initial contact, Mikosz invited Hui to meet Defendant Chojnacki. During this meeting, Mikosz told Hui that she was a real estate broker with Chase Real Estate, which is affiliated with "Flip Chicago."  Mikosz told Hui that her managing broker was Defendant Chojnacki, also a Chase Real Estate agent.

23.     Mikosz and Chojnacki actively led Plaintiff to believe that since they would represent him as agents of Chase Real Estate, and because "Flip Chicago" is affiliated with Chase Real Estate, that the transactions would be safely negotiated and consummated under the auspices of Chase Real Estate.

24.     At all times relevant herein, the website for Flip Chicago was a very similar to the website for Chase Real Estate (See printed copy of the Flip Chicago "Our Team" website attached as Exhibit 2 and the Chase Real Estate Website at Exhibit 3, both printed approximately as of the filing hereof).

25.     Moreover, both websites include many photos of the same persons – including Chojnacki and Mikosz.  The professional portrait photographs of Chojnacki and Mikosz are precisely the same photographs on both the Flip Chicago and the Chase Real Estate websites.

26.     Hui purchased three properties over the course of the following seven months via the Flip Chicago enterprise (aggregating $513,700 in front-end investment) before he became aware of the Defendants' fraudulent conduct as set forth below.

### Part II of the Fraud: The "REO" and Imposter Bank Seller

27.     Chojnacki and Mikosz told Hui that a key component in the service that they would provide to him would be assistance in locating and making offers on suitable investment properties.

28.     Specifically, Mikosz and Chojnacki told Hui that he would be purchasing single family homes from banking institutions which had foreclosed on the previous owners/borrowers.

29.     Mikosz and Chojnacki represented that the properties were foreclosure or Real Estate Owned (REO) properties.

30.     REO refers to a lender-owned property that was not sold at a foreclosure auction. Properties become REO when borrowers default and the lender repossesses and attempts to sell them.  The lender bank takes ownership of a foreclosed property when it fails to sell at the amount sought to cover the loan. These REO properties are generally understood to be acquired by investors from the foreclosing bank at a significantly discounted price.

31.     Mikosz and Chojnacki assured Hui that all of the properties he would be making offers on were foreclosure properties or REO properties being offered for sale by an REO bank.

32.     Accordingly, a significant component to the investment was the discounted price for which the property could be acquired from the foreclosing bank.

33.     Mikosz specifically represented that she would assist Hui in crafting an appropriate offer to the REO bank.

34.     She assured Hui that she and her company had an ongoing professional relationship with the REO and foreclosing banks, and therefore that would be a reason to expect respectable treatment during the offer process.

35.     The truth was that the seller of the properties that Mikosz would introduce Hui to was not an REO bank, but a corporation owned by affiliates of Mikosz and Chojnacki with the deliberately misleading name of "1st Midwest Financial, Inc."

36.     Despite its name, Defendant 1st Midwest Financial, Inc. has no banking license or any other financial services credentials.

37.     Defendant 1st Midwest Financial, Inc., has no affiliation with First Midwest Bancorp., the widely known bank headquartered in Chicago which was one of the largest banking institutions in the United States until its 2022 acquisition by Old National Bank.

38.     In furtherance of their overall enterprise, Defendants or their affiliates have formed corporations by appropriating other major bank names, such as BMO (Bank of Montreal).

39.     Defendant 1st Midwest Financial, Inc., posing as a bank, previously acquired (or contracted to acquire) the property from the actual REO bank at the discounted price promised to Hui.

40.     This impostor bank then sold the property to Hui at an inflated price with the other Defendants acting as their accomplices – misusing their fiduciary responsibilities to conceal the imposter bank from both Hui and his lenders.

41.     The related offer and acceptance process that Mikosz and Chojnacki assisted Hui with was a farce. The purchase price of a property was determined by the affiliated Defendants before any so-called offer was crafted and "accepted."

8

42.     When Hui actually purchased a property from the imposter bank, he would generally pay an undisclosed mark-up averaging 11%.  In one instance, the undisclosed mark-up amounted to 17%.

43.     Thus, Mikosz and Chojnacki and their affiliates at the impostor banks which sold the properties to Hui deprived him of the value of the discount embedded in the promise that the acquisition would be from an REO lender.

44.     This complex of misleading statements, active concealments, deceptive practices and failures to disclose occurred notwithstanding the fact that Mikosz, Chojnacki and Chase Real Estate were Hui's real estate agents in the purchase transactions.

45.     The aggregate amount that these Defendants earned from this initial part of their fraud scheme spanning the three acquisitions between October 18, 2020 and May 5, 2021 exceeds $50,000. This prong of the scheme was only the beginning.

46.     The impostor bank, 1st Midwest Financial, Inc., states on its corporate filings that its President is Defendant Kendall Murphy, an affiliate of Defendant Chojnacki.

47.      Kendall Murphy's address on the corporate filings is 1046 Midwest Road, Northbrook, Illinois – which is a non-existent address (probably invented to mislead the public to believe that the bank was the namesake for the street – which is common for very large corporations). (See Exhibit 4, Illinois Secretary of State Corporate Summary).

48.     When an address was required for a closing statement, 1st Midwest Financial, Inc. provided the address of 30W121 Estes Street in Naperville, Illinois – which was a foreclosure property with an apparently abandoned house near an industrial area in northwestern Naperville. Currently, this address is a vacant lot. (See Exhibit 5 for an image depicting 1st Midwest Financial Inc.'s Naperville address).

9

49.     As mentioned above, Defendant 1st Midwest Financial, Inc. has no affiliation with First Midwest Bank (First Midwest Bancorp, Inc.) the national commercial banking and financial services institution.

## Part III of the Fraud: The Renovations

50.     The point of the purchases was to enable Hui to quickly flip the properties and sell them at a profit once they had been renovated.

51.     Defendants Mikosz and Chojnacki promised Hui that as part of the services offered through Chase Real Estate, any required renovations on the properties would be completed in a cost effective and reasonable manner to enable him to flip the properties quickly at a profit.

52.     In reality the properties' condition was worse than what the Defendants represented to Hui.

53.     Subsequent to the purchases, Defendants Chojnacki and Mikosz, with the aid of affiliated Defendants engaged in a continued fiction with Hui, replete with misrepresentations and calculated omissions to keep Hui misled about the transactions.

54.     Defendants continued to mislead Hui that he got a "great deal" by purchasing the properties from the REO bank counterparty at REO level pricing.

55.     The renovation period was a key step in the fraud-scheme because it provided the Defendants with control over the information available to the investor during renovations.

56.     The renovation period further prevented the discovery of the true condition of the properties by the Plaintiffs and, accordingly, the exaggerated condition of the properties, which would have explained the inflated price contrived by the Defendants.

57.     Moreover, Defendants concealed and misrepresented known property defects and intent of inducing Hui to enter into more transactions.

58.     Specifically, Chojnacki and Mikosz told Hui that the properties would be renovated at a discounted price by working with their service providers.

59.     However, Chojnacki and Mikosz failed to disclose that most of the promised work would be directed at firms affiliated with Chojnacki and Mikosz and in significant portions to firms owned and or controlled by Mikosz's husband.

60.     Mikosz and Chojnacki represented to Hui that the work was being performed and would enable Hui to flip the properties in a short time, as had been promised.

61.     Despite Hui paying exorbitant fees to Defendants for the renovations, in reality, the work was either not performed, was not performed adequately, and/or was not performed up to code.  Hui has since sold the three properties, but due to the fraudulent conduct of the Defendants, he netted aggregate proceeds far less than what he would have absent the fraud and mismanagement.

62.     Invariably, the Defendants' promised management and oversight of the renovations descended first into questionable conduct, then into costly mistakes and fraudulent billings, and then finally into complete chaos resulting in major financial loss for Hui.

### 2241 North 72nd Ct., Elmwood Park, Illinois

63.     The case of 2241 North 72nd Ct., Elmwood Park, Illinois (the "Elmwood Park Property") exemplifies Defendants' pattern of conduct subject to this Complaint.

64.     In February of 2021, Mikosz "introduced" Hui to the Elmwood Park Property. See Mikosz's Flip Chicago offering presenting the deal at Exhibit 6.

65.     The Flip Chicago offering tells the investor that the Elmwood Park Property is a "New Inventory" on Flip Chicago's "FORECLOSURE HOT LIST - BUY, FIX and FLIP."

66.     The offering provides financial information. Specifically, the "Purchase Price" is $235,000.

67.     The Elmwood Park Property was not owned by a foreclosing bank but was owned by Mikosz and Chojnacki's affiliate and impostor bank 1st Midwest Financial, Inc.  1st Midwest Financial, Inc. had already purchased the property from a private party who had owned the property via their land trust since 1984 for the price of $210,000.  There was no foreclosure.

68.     On the recommendation of the Defendants, Hui contracted to purchase the Elmwood Park Property for $235,000.  The price was not bargained for.  It was unilaterally established by the Defendants acting in concert with each other. Nevertheless, Hui was actively misled to believe the seller was a foreclosing bank.

69.     On May 5, 2021, Hui closed on the Elmwood Park Property transaction.

70.     Defendant Chase real estate received a Commission of $8,225.00 at the closing.

71.     Mikosz and Chojnacki assured Hui that they had significant experience with renovation oversight management as well as navigating the mandatory local permit processes appurtenant to making significant renovations to property.

72.     Defendant Mikosz and Chojnacki told Hui that they had worked with many of these contractors for almost ten years or more.  They trusted them and knew that they could get the job done based on all the previous projects they had worked on.

73.     Based on Defendant Chojnacki and Mikosz's assurances and representations and the "Chase" name, Hui believed them.

74.     It appears that much, if not all of the work that Hui paid for was not completed or was completed so poorly as to require it to be redone.

75.     Portions of funds paid by Hui to Defendants were paid to Mikosz' husband's company, FNBO Property Management LLC. See paid invoice at Exhibit 7.  It was never disclosed to Hui that FNBO property management was Mikosz' husband's company.

76.     FNBO is an Illinois LLC.  It has affiliation with the First National Bank of Omaha, the regional banking and financial services institution which uses the registered trademarked acronym of FNBO.

77.     During the renovations phase of the projects, defendants issued Hui numerous quotes and invoices, which would be paid.

78.     Over the course of the renovations spanning all of the projects, it became obvious that Defendants and their contractors were billing Hui for work that was either not performed or performed so poorly as to require redoing.

79.     Moreover, in addition to not providing breakdowns for work done or itemizations of charges, Defendants had been funneling Plaintiffs' funds to Defendant Mikosz's spouse and other close affiliates, all without disclosure to Hui.

80.     Prior to the degeneration of the Flip Chicago enterprise projects, and prior to Hui's discovery that he had been misled, Defendants Mikosz and Chojnacki persuaded Hui to participate in a separate but related scheme involving multi-unit properties.

## II. THE CITIPOINT FRAUD

### Multi-Unit Properties

81.     In addition to the Flip Chicago fraud enterprise, the Defendants also engaged in a similar scheme to defraud involving multi-unit properties. Defendants referred to this arm of their enterprise as "CitiPoint Properties"

82.     The initial part of the scheme went similarly as with Flip Chicago. Beginning on May 10, 2021, Defendant Grand Columbus EC LLC ("Grand Columbus") was the owner of the real estate at 4104-08 Grand Boulevard and 1717 East Columbus Dr., East Chicago, Indiana. Though on different streets, these properties are connected and are hereafter referred to as the "Grand/Columbus Property".

83.     CitiPoint identified itself as a source for connecting investors to undervalued and underperforming properties – carrying the promise of rapidly increasing equity and high cash flow.

84.     This alleged connection between the target investor and the alleged owner of "off-market" properties was referred to as an offering of "directly sourced" properties.  Hui variably interacted with Mikosz and Chojnacki throughout the CitiPoint investment.

85.     Mikosz and Chojnacki actively led Plaintiff to believe that since they were agents of Chase Real Estate, and because "CitiPoint" is affiliated with Chase Real Estate, that the transactions would be safely negotiated and consummated under the auspices of Chase Real Estate.

86.     At all times relevant herein, the website for CitiPoint was a virtual reflection of the website for Chase Real Estate (See printed copy of the CitiPoint website as of January 27, 2023 attached as Exhibit 8 and the Chase Real Estate Website at Exhibit 3 as of the filing hereof). Both websites were significantly revised prior to and since the attached captures. Prior to

14

the revisions and at the times relevant to the facts alleged herein, the websites were of the same design motif and were nearly identical to each other.

87.     Mikosz and Chojnacki told Hui that he would be purchasing buildings that were underperforming directly from the local landlord. Chojnacki described these local landlords as "mom and pop landlords" who were retiring.

88.     Chojnacki and Mikosz further told Hui that if Hui used Chojnacki and Mikosz as his real estate brokers through Chase and bought the Columbus Grand Property at a steep discount from the retiring long-time owner, and then had Chojnacki's Mainstreet Management professionally manage the property, there would be great cash flow and equity appreciation.

89.     The false promise that the property was owned and self-managed by a local, unprofessional landlord allowed Mikosz and Chojnacki to foster the proposition that 1) the property could be acquired from the local individual at a bargain price and 2) once the property was managed properly (with the help of Chojnacki's affiliate property management company, Mainstreet Management), the investor (Hui) could expect substantial cash flow.

90.     Chojnacki sent Hui a link to the Citipoint prospectus for the grand Columbus property. As of July 30 2021 the prospectus showed current positive cash flow for the grand Columbus property with the property currently completely rented -- save for one unit under renovation. The prospectus also promised even higher cash flow once properly managed by the new investor using Chojnacki's property management company (Mainstreet Management). See prospectus document attached at Exhibit 9).

91.     The prospectus further tells the investor that the properties "today's market value" is $776,926.

92.     Next, the prospectus tells the investor that the "target purchase price" is $615,000.

93.     Mikosz and Chojnacki told Hui that the property owner was a longtime owner who was motivated to sell. This was false. Mikosz and Chojnacki knew that the owner was themselves and/or their affiliated Defendants who had just acquired the property for approximately $460,000.

94.     The CitiPoint prospectus phrase "Target Purchase Price" is calculated to mislead. The end price was unilaterally determined by the affiliated Defendants in advance. The target price, the offer, and the negotiated terms were mere theatrics.

95.     Contrary to their representations, Mikosz and Chojnacki had actual knowledge that the Columbus Grand Property was not fully leased at the time these representations were made to Hui.

96.     Mikosz continued to describe herself to Hui as his real estate agent and representative in the Columbus Grand Property transaction. However, Mikosz actually was employed by and/or was an agent acting on the behalf of her affiliated Defendants.

97.     Chojnacki also continued to describe himself to Hui as his real estate agent and representative. However, Chojnacki and his affiliates acquired the property that Mikosz and Chojnacki would contract for sale to Plaintiffs. The entity used to hold the property for this part of the scheme was Defendant Grand Columbus EC, LLC, which is indirectly owned and controlled by Defendants Chojnacki and Rixer.

98.     Believing Chojnacki and Mikosz's misrepresentations regarding the Columbus Grand Property, Hui entered into a contract to purchase the Columbus Grand Property on May 12, 2021. (See Columbus Grand Property Contract attached as Exhibit 10).

99.     Moreover, Defendants Mikosz and Chojnacki had actual knowledge the Columbus Grand Property and Columbus Property were far from fully leased and fully current in

rent. In fact, the buildings were partially vacant, multiple tenants were in the process of eviction, and others were severely in arrears.

100.     Mikosz and Chojnacki knew these occupancy representations were untrue not only because Chojnacki and his affiliates controlled the puppet entities that owned the properties, but also because Chojnacki's management company, Main Street Property Management, was managing the properties.

101.     An example of Defendants' intention to mislead appears on documents produced by Rachel Irwin in response to a request for more specifics.

102.     In an e-mail dated September 13, 2021 Defendant Irwin submitted documents purporting to respond to a request for verification of rents. (See the email and attachments at Group Exhibit 11).

103.     Irwin's e-mail attaches a rent roll from August 2021. In response to the request for proof of rents received for two to six months, Irwin attached an income statement for one month dated August 31, 2021.

104.     The information contained in the rent roll and the "income statement" was falsified.

105.     However, separate and apart from the misrepresentations in its content, it is critical to note that on the document purporting to be an income statement, Defendants, or one of them, redacted the document heading to conceal the maker of the document.

106.     The maker of the document was Main Street Management Services LLC, Chojnacki's management company.

107.     The redacted document was submitted by Defendant Irwin to the Plaintiff.

108.    If Hui was aware at the time of this document that Chojnacki's company was managing the property, it would have revealed the falsehood that the owner was a long-time and distressed owner poorly performing because of mismanagement.

109.    If Hui was aware at the time of this document that Chojnacki's company was managing the property, it would have prompted an inquiry as to the true nature of the actual seller -- which would have revealed that the truth that the Defendants has had interposed themselves between Hui and the actual promised long time owner for the purposes of fleecing Hui for approximately $150,000.

110.    The fact that Defendants intentionally concealed the source of this document reveals that it was their intention to defraud Hui.

**The Real Estate Closing**

111.    On November 28, 2021, Hui closed on the transaction, at which time the Plaintiff acquired legal title to the Columbus Grand Property. The purchase price was $615,000.

112.    Defendant Grand Columbus EC, LLC (indirectly owned and controlled by Defendants Chojnacki and Rixer) purchased the Columbus Grand Property immediately prior. The seller was not an old, longtime owner who had owned the building a long time, contrary to the representations of Defendants Mikosz and Chojnacki.

113.    The purchase price paid for the Property was, on information and belief, $460,000.

114.    Defendant EJ Investment Group (Chojnacki and Rixer's LLC) received a referral fee of $18,450.

115.    Defendant Midwest title and closing services received a "Closing Coordination Fee" of $750.

116.    Defendant Mikosz and Chojnacki at all times held themselves out to be agents of and acting on the behalf of Hui.

117.    At no time did Defendant Mikosz or Chojnacki disclose any conflict of interest.

## The Post Closing Fraud

118.    Defendants have used the management of the property as cover for the ongoing subterfuge. In one particularly glaring example, the building had been cited for failing to provide adequate heat to its units prior to the closing. Defendants kept this citation secret from Hui. See the summons attached hereto as Exhibit 12.

119.    Defendants Mainstreet Management, acting through Defendant Chojnacki and Defendants Grand Columbus EC LLC fraudulently misrepresented the condition of the properties to Hui.

120.    Contrary to the representations of Defendants, Hui learned that many of his units in the Columbus Property were vacant and/or uninhabitable.

121.    Contrary to the representations of Defendants, Hui learned that the Defendants did not comply with their obligations to disclose building violations prior to the closing of the transaction.

122.    Then, perversely, they proceeded to claim the problem commenced after closing, and attempted to bill Hui for the replacement boiler at the approximate cost of $35,000.

123.    Defendants' misrepresentations as to violations and failure to comply with East Chicago real estate transfer inspection and approval requirements resulted in fines and/or citations to Hui.

124.    Despite the properties being noncompliant with East Chicago ordinances, and despite both properties having vacancies and uninhabitable units, Defendants, through their

property management company Mainstreet, have charged Hui for enormous and repeating unidentified charges, and have withheld and/or otherwise refused to have any tenant funds received by them turned over to Hui.

125.    Without any disclosure to Hui, many payments were made to Mikosz' husband's company for work not done. See FNBO Invoice for the Grand Columbus Property attached at Exhibit 13.

126.    At all times herein, Defendant Irwin was acting as an agent of Defendant Midwest Title and of Grand Columbus EC LLC.

127.    Midwest Title, through its agent Irwin, plays a significant role in the transactions by providing registered agent services to the various puppet entities, housing various legal operations appurtenant to the entities and transactions, as well as receiving payment at closing for some unspecified services described in the closing statement as "Closing Coordination Fee."

128.    As stated above, Defendants Irwin, Chojnacki, Mikosz, Midwest Title, EJ Investment Group and Mainstreet Management are all located at and operate out of the same office space.

129.    Defendants Chojnacki, Long and Mikosz made misrepresentations to Hui to induce him to consummate the subject transactions.

130.    Defendants did not disclose that they had a conflict of interest in that they were an owner and/or controller of the Grand Columbus Property.

131.    Defendants have attempted to induce Hui to repeat the scam with additional properties.

132.    Defendants have treated other individuals or entities in the same illegal manner alleged by Hui.  There are nine known specific additional individuals and/or entities who were

similarly defrauded by precisely or nearly precisely the same pattern of artifices and fraudulent misrepresentations as set forth in this Complaint.

133.    The Defendants are, at present, continuing to lure investors into the enterprise using the same scheme and under the same guises as those set forth herein. Accordingly, the conduct alleged herein constitutes the Defendants' regular method of conducting their business.

## COUNT I:  RACKETEER INFLUENCED AND CORRUPT ORGANIZATION ACT (RICO) - 18 U.S.C. 1962(c), (d)

### (Defendants Chojnacki, Mikosz, Grand Columbus EC LLC, Citypoint Illinois, LLC)

134.    Plaintiffs Hui re-states and re-alleges Paragraphs 1 through 133 as though fully stated herein.

### RICO Persons

135.    Defendants Chojnacki, Mikosz, Grand Columbus EC LLC, and Citypoint Illinois, LLC, are each capable of holding a legal or beneficial interest in property, and therefore each is a "person" within the meaning of 18 U.S.C. § 1961(3).

### The Rico Enterprise

136.    Defendants Chojnacki, Mikosz, Grand Columbus EC LLC, and Citypoint Illinois, LLC, were associated in fact, and constituted an "enterprise" as that term is defined in Title 18, United States Code, Section 1961(4), which enterprise was engaged in, and the activities of which affected, interstate commerce. This enterprise shall be referred to herein as the "CitiPoint Enterprise."

137.     The CitiPoint Enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.

138.     The primary purpose of the CitiPoint Enterprise was to lure and then fleece unsuspecting real estate investors for the financial benefit of CitiPoint.

139.     For the purpose of 18 U.S.C. § 1962(c), and during the periods relevant to this complaint, said Defendants each had authority within the CitiPoint Enterprise, and/or conducted or participated, directly or indirectly, in the conduct of the CitiPoint Enterprise's affairs through the pattern of racketeering activity described herein.

**Effect on Interstate Commerce**

140.     The CitiPoint Enterprise conducted its racketeering activity, in part, using the interstate mails and wire communications, including by use of the telephones, by electronic transfers of funds, and through the mailing of checks.

**Predicate Acts of Racketeering Activity**

141.     Through the CitiPoint Enterprise, or in conspiracy with it, the Defendants conducted, engaged in, and participated in a pattern of racketeering activity, consisting, at a minimum, of the following predicate acts: (a) multiple violations of Title 18, United State Code, Sections § 1341, 1343, and 1346 (mail fraud and wire fraud). The scheme to defraud was advanced, concealed or furthered by the use of the U.S. mail or wires.

142.     Specifically, the Defendants' predicate acts include, but are not limited to, the following:

     (a)    In furtherance of a scheme or artifice to defraud as defined in 18 U.S.C. §§ 1341 & 1346, and with specific intent to defraud, Defendants placed ads on the Internet and on social media with the intent to induce investors to participate in

22

"directly sourced" real estate opportunities when they actually intended to sell the duped investor their own significantly marked-up property.

(b)     Engaging in a sustained fiction with the victim, replete with misrepresentations and calculated omissions to keep the investor misled that their transactional counterpart was an "old retiring couple" selling the property directly to the investor at bargain level pricing.

(c)     Fabricating occupancy records of the property to mislead the investor with the falsehood that that property was fully-leased and the tenant payments were fully current.

(d)     Concealing and misrepresenting known significant building code and occupancy violations from the investor with the intent of inducing the investor to enter into the transaction.

(e)     Engaging in post-closing fraudulent activity in the management of the property by 1) continued concealment of and falsification of rent records; 2) continued concealment of building occupancy and code violations.

## **Pattern of Racketeering Activity**

143.    The Defendants acted, and conspired to act together, and in association with others knowingly and repeatedly committed the above fraudulent acts in furtherance of and for the purpose of enriching themselves financially and to otherwise further the ends of the CitiPoint Enterprise.

144.    The predicate acts described above were related to one another as part of a common scheme or plan.

145.    Such unlawful conduct constituted a continuous pattern of racketeering activity beginning as early as November 2021, continue through the present, and is likely to continue into the foreseeable future.

**Conspiracy (18 U.S.C. § 1962(d))**

**(Defendants 1st Midwest Financial, Irwin, Midwest Title and Closing Services LLC, EJ Investments, Inc., Chase Real Estate, LLC, Mainstreet Property Management, LLC, Murphy, Rixer, and Illinois Assets LLC)**

146.    As described above, Defendants 1st Midwest Financial Irwin, Midwest Title and Closing Services LLC, EJ Investments, Inc., Chase Real Estate, LLC, Mainstreet Property Management, LLC, Murphy, Rixer, and Illinois Assets LLC, did knowingly agree to facilitate the CitiPoint Enterprise Defendants, and those acting in concert with them, to violate 18 U.S.C. § 1962(c) for the purpose of achieving and profiting from the racketeering activities described above.

147.    In furtherance of that agreement, the Defendants knowingly and intentionally agreed and conspired to commit at least two of the predicate acts set forth above and they did so with the knowledge and intent that such acts were in furtherance of the foregoing pattern of racketeering.

148.    Specifically, the Defendants described herein were either affiliated or controlled by the CitiPoint Enterprise Defendants

149.    The Defendants described herein knowingly provided auxiliary services with respect to the marketing, negotiation, and transaction of real estate closing services which were necessary to and facilitated the accomplishment of the goals of the CitiPoint Enterprise.

150.    Defendant Chase Real Estate LLC provided the cover of a legitimate real estate brokerage enterprise, oversaw the conduct and behavior of Mikosz and Chojnacki, and received a commission from and Grand Columbus EC LLC (the sellers) notwithstanding the fact that at all relevant times herein, they held themselves out as Hui' agent.

151.    Defendant Irwin is forming at least some of the layers of shell entities, providing misinformation about the real estate, acting as officers and/or principals for the enterprise's

24

entities, and acting as their counsel in the negotiations and transactions wherein the real estate is conveyed to the investor, or in this matter, acts as counsel for the fictitious "mom and pop" couple.

### Injuries to the Plaintiff Business and Property

152.    As a direct and proximate cause of the described racketeering activities and violations of 18 U.S.C. § 1962(c), and the described conspiracy in violation of 18 U.S.C. § 1962(d), the Hui has been injured in their business and property. The Defendants' racketeering activities caused Hui to make an initial investment of $1,128,600 in real estate which the Defendants had actual knowledge was worth far less and said racketeering activities directly resulted and were the proximate cause of the Hui' loss of invested funds.

153.    The Defendants' racketeering activities further caused Hui' substantial damages due to the fact that the Properties were either not certified for occupancy and thus un-rentable due to multiple severe violations of municipal occupancy and code violations that were known and hidden from Hui or requiring significant repairs at a substantial expense to Hui.

154.    The Defendants racketeering activities further caused the Plaintiffs' substantial damages due to the fact that numerous tenants in the Properties were not paying rent and eviction proceedings were necessary.

155.    These injuries were a foreseeable consequence of the Defendants' racketeering activities and violations of 18 U.S.C. § 1962(c), and their conspiracy in furtherance of those racketeering violations, in violation of 18 U.S.C. § 1962(d).

WHEREFORE, Plaintiff Randy Hui respectfully requests the Court to enter judgment in his favor and against each of the CitiPoint Enterprise Defendants and their conspirators and order the following relief:

(a)     All damages proven pursuant to RICO, trebled as permitted by law;

(b)     Punitive damages, attorney fees, and costs as permitted by law; and

(c)     Such other and further relief as the Court may deem just and appropriate.

**COUNT II: COMMON LAW FRAUD**

156.     Plaintiffs restate Paragraphs 1 through 155 as if fully set forth herein.

157.     Defendant Mikosz, Chojnacki and Irwin's statements set forth above concerning the Properties, its condition, and its leased status were false statements of material fact.

158.     Defendants Mikosz and Chojnacki made the statements with knowledge that they were false.

159.     Defendants Mikosz and Chojnacki made the false statements with the intention to induce Hui to purchase the Property under falsified premises.

160.     Hui reasonably and justifiably relied on the said Defendants' false statements.

161.     Hui suffered damages due to reliance on the false statements.

162.     Accordingly, the Defendants' statements, Plaintiff's reliance thereon, and resulting damages constitute common law fraud.

WHEREFORE, Plaintiff, Randy Hui, prays that this Honorable Court enter judgment in his favor and against Defendants in an amount in excess of the jurisdictional limit of Seventy-Five Thousand Dollars ($75,000.00), plus their costs of suit, attorneys' fees, and such other relief as this Court deems just and equitable.

**COUNT III: VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT (ILLINOIS CONSUMER FRAUD ACT)**

163.     Plaintiffs re-state Paragraphs 1 through 162 above as if fully set forth herein.

164.     Defendants Mikosz, Chojnacki, Long and Irwin's statements, including but not limited to their statements set forth above concerning the Columbus Grand Property its

condition, and its leased status were false statements of material fact and constituted a deceptive act or practice by the said Defendants.

165.    Defendants Mikosz, Chojnacki, Long and Irwin intended that Hui rely on the deception.

166.    The occurrence of the deception was in the course of conduct involving trade and commerce.

167.    The deceptions were originated by residents of Illinois, concern Illinois real estate, and have resulted in violations of Illinois municipal laws.  Accordingly, the conduct alleged herein directly and indirectly affect the State of Illinois.

168.    The deception was the proximate cause of actual damage to Hui.

169.    Accordingly, the conduct of deception perpetrated by Defendants Mikosz Chojnacki, Long and Irwin constitutes a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act.

WHEREFORE, Plaintiff Randy Hui prays that this Honorable Court enter judgment in his favor and against Defendants in an amount in excess of the jurisdictional limit of Seventy-Five Thousand Dollars ($75,000.00), plus their costs of suit, attorneys' fees, and such other relief as this Court deems just and equitable.

## COUNT IV: VIOLATION OF THE ILLINOIS REAL ESTATE LICENSE ACT

170.    Plaintiffs re-state Paragraphs 1 through 169 above as if fully set forth herein.

171.    Defendants Mikosz and Chojnacki provided real estate services in this transaction as agents of Chase Real Estate LLC.

172.    Defendants Mikosz, Chojnacki and Chase Real Estate LLC were "Licensees" under the Real Estate License Act, 225 ILCS 454/1-1 *et seq.*

173.    Section 15-25 of the Real Estate License Act mandates that:

> Licensees shall treat all customers honestly and shall not negligently or knowingly give them false information.

174.    Section 15-5 of the Real Estate License Act specifies that:

> This Article 15 may serve as a basis for private rights of action and defenses by sellers, buyers, landlords, tenants, real estate brokers, and real estate salespersons.

175.    Defendants Mikosz, Chojnacki and Chase Real Estate LLC breached the requirements of the Real Estate License Act by committing the following actions:

(a)    fraudulently misrepresenting that they represented the Plaintiffs as buyer when in actuality they represented, were affiliates of and/or were direct agents of the seller;

(b)    fraudulently misstating the condition of the Property;

(c)    fraudulently misstating the tenancy of the Property;

(d)    fraudulent falsification of the purported rent roll;

(e)    fraudulently misrepresenting to the Plaintiffs that the seller in the transaction was a directly sourced, off-market seller when in truth the Seller was comprised of, directly affiliated with or controlled by the Defendants themselves or were agents thereof;

176.    Plaintiffs relied on Defendants Mikosz, Chojnacki and Chase Real Estate LLC's statements and suffered damages therefrom.

WHEREFORE, Plaintiff Randy Hui prays that this Honorable Court enter judgment in his favor and against Defendants in an amount in excess of the jurisdictional limit of Seventy-Five Thousand Dollars ($75,000.00), plus their costs of suit, attorneys' fees, and such other relief as this Court deems just and equitable.

## COUNT V:  NEGLIGENT MISREPRESENTATION

177.    Plaintiffs re-state Paragraphs 1 through 176 above as if fully set forth herein.

178.    Defendants Mikosz, Chojnacki, Long and Irwin's statements, including but not limited to their statements set forth above concerning the Columbus Grand Property and the Columbus Property, its condition, and its leased status were false statements of material fact.

179.    Defendants Mikosz, Long, Irwin, and Chojnacki's made the false statements through carelessness or negligence in ascertaining the truth of the statement by the party making it.

180.    Defendants Mikosz, Long, Irwin, and Chojnacki's false statements were made with intention to induce Hui to act.

181.    Hui' actions in consummating the transaction were in reliance on the false statements.

182.    Hui' reliance was the proximate cause of damage to Hui.

183.    Defendants Mikosz, Long, Irwin, and Chojnacki's statements therefore constitute Negligent Representation.

WHEREFORE, Plaintiff Randy Hui prays that this Honorable Court enter judgment in his favor and against DEFENDANTS in an amount in excess of the jurisdictional limit of Seventy-Five Thousand Dollars ($75,000.00), plus their costs of suit, attorneys' fees, and such other relief as this Court deems just and equitable.

29

## COUNT VI: BREACH OF CONTRACT – FALSIFIED RENT-ROLL

184. Plaintiffs re-state Paragraphs 1 through 183 above as if fully set forth herein.

185. Paragraph 11 of the Contract between the Plaintiffs and Defendant Columbus Grand EC LLC provides the following contractual obligation on the part of the Seller: "Seller is required to deliver assignments of leases and Rent Roll to Buyer at the time of closing." (Lines163-164).

186. The Sellers provided a document purporting to be a rent roll that was materially and knowingly falsified.

187. Significantly, the falsified rent role provided that the property was substantially eased, and all rented units were current in payment status when in fact there were vacant units and severely delinquent tenants.

188. The duty under the contract to provide a rent roll implies that the rent roll tendered will be free from material inaccuracies and known falsehoods.

189. The Contract between the parties was a valid and enforceable contract.

190. The Plaintiffs performed all of his obligations pursuant to the terms of the contract.

191. The Defendants breached the contract by providing a document purporting to be a rent roll that was significantly, materially and knowingly falsified.

WHEREFORE, Plaintiff, pray that this Honorable Court enter judgment in their favor and against Defendants in an amount in excess of the jurisdictional limit of Seventy-Five Thousand Dollars ($75,000.00), plus their costs of suit, attorneys' fees, and such other relief as this Court deems just and equitable.

## COUNT VII: BREACH OF CONTRACT –
## FALSE REPRESENTATIONS AS TO BUILDING CODE VIOLATIONS

192.    Plaintiffs re-state Paragraphs 1 through 191 above as if fully set forth herein.

193.    Paragraph 10 of the Contract between the Plaintiffs and Defendant Prairie Raynor, LLC provides the following representation: "Seller represents that Seller has not received written notice from any governmental body or owner association regarding (a) zoning, building, fire or health code violations that have not been corrected."

194.    Defendants had been in receipt of notices and had actual knowledge of significant building and health code violations that had not been corrected at the time of the contract and at the time of the closing.

195.    The contract between the parties was a valid and enforceable contract.

196.    The Plaintiffs performed all of his obligations pursuant to the terms of the contract.

197.    The Defendants breached the contract by misleading statements and or omissions concerning the representations required by Paragraph 10 resulting in significant damages to the Plaintiffs.

WHEREFORE, Plaintiff, prays that this Honorable Court enter judgment in his favor and against Defendants in an amount in excess of the jurisdictional limit of Seventy-Five Thousand Dollars ($75,000.00), plus their costs of suit, attorneys' fees, and such other relief as this Court deems just and equitable.

## COUNT VIII
## UNJUST ENRICHMENT

198.    The Plaintiff realleges and incorporates by reference herein the allegations of Paragraphs 1-159 of this Complaint, as if fully set forth herein.

31

199.    Defendants did conspire and collude in the undertaking to mislead Plaintiff into believing he would be acquiring investment property directly from a long-time seller.

200.    Plaintiff believed and relied on Defendants' scheme of misleading statements and conduct when he agreed to buy the Properties from Defendants, who had secretly already purchased the Properties directly from the long-time seller for $216,000 less than the amount that they fraudulently induced Plaintiff to pay.

201.    The direct and proximate cause of the Defendants was to deprive the Plaintiff of the fair bargain they had promised him.

202.    As a consequence of receiving and retaining the $216,000, the Defendants have unjustly retained a benefit to the Plaintiff's detriment, and Defendants' retention of the benefit violates the fundamental principles of justice, equity, and good conscience.

WHEREFORE, Plaintiff respectfully requests the Court to enter judgment in his favor and against each of Defendants and order the following relief:

(a)    Payment to the Plaintiff of the benefit that they received as a consequence of their fraudulent misrepresentations being the difference between the purchase price of the Property paid by Plaintiff and that paid by themselves or such other amount to be proven at trial;

(b)    Punitive damages, attorney fees, and costs as permitted by law; and

(c)    Such other and further relief as the Court may deem just and appropriate.

Respectfully Submitted,

/s/Carmen Gaspero

_____

/s/Lisa Gaspero

_____

Randy Hui
By: His Counsel

Gaspero & Gaspero
Attorneys at Law, P.C.
Carmen A. Gaspero
Lisa M. Gaspero
2001 Butterfield Rd., Suite 1022
Downers Grove, Illinois 60515
630-687-9700